```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
IN RE NONPARTY SUBPOENAS           :
DUCES TECUM
                                   :
CAHN & SAMUELS, LLP and MAURICE
U. CAHN,                           :
                    Petitioners,
---------------------------------------------------:
THE TOPPS COMPANY, INC.,           :

                    Plaintiff,     :

         -against-                 :

KOKO'S CONFECTIONARY &             :
NOVELTY, A DIVISION OF A & A
GLOBAL INDUSTRIES, INC.,           :

                    Defendant.     :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED 5/15/19

**MEMORANDUM AND ORDER**

18-MC-468 (GBD)(KNF)

Before the Court is "Nonparties Maurice U. Cahn and Cahn & Samuels LLP's Motion to Quash Subpoenas Duces Tecum and/or for a Protective Order," served on them and opposed by Topps Company Inc. ("Topps"), the plaintiff in the underlying action captioned Topps Co. v. Koko's Confectionary & Novelty, 16-CV-5954 (GBD)(KNF).

The petitioners contend that the subpoenas, as modified by Topps in July 2018, seek:

(1) All communications and agreements to which both Lapeyrouse and Koko's are a party that refer or pertain to any or all of (a) the Squeezy Squirt product or prototypes thereof, (b) Topps, (c) the Juicy Drop product, (d) the '316 Patent, (e) the present lawsuit, (f) any efforts to redesign Squeezy Squirt or introduce a new product in response to Topps' allegations in this lawsuit, and (g) patent or trade dress applications relating to candy products that either dispense liquid candy, or that that [sic] contain two or more different kinds of candy (e.g., solid and liquid, solid and granular, etc.).

(2) Documents sufficient to identify all patent or trade dress applications (both U.S. and international) concerning patent or trade dress applications filed or owned by Lapeyrouse or Koko's relating to candy products that either dispense liquid candy, or that contain two or more different kinds of candy (e.g., solid and liquid, solid and

1

granular, etc.). [NOTE: A simple listing of applications will suffice if that is easier. This will allow us to confirm that we have a complete list, particularly as to any that may not have become public, or that were filed under a different name.]
(3) All non-public correspondence with patent or trademark offices (both U.S. and international) concerning patent or trade dress applications filed or owned by Lapeyrouse or Koko's relating to candy products that either dispense liquid candy, or that that [sic] contain two or more different kinds of candy (e.g., solid and liquid, solid and granular, etc.).
(4) All communications concerning validity, invalidity, infringement, or non-infringement of Topps's asserted intellectual property rights in the present lawsuit, as well as all communications concerning any defenses to Topps' claims in the present lawsuit, to the extent Koko's will be relying on any advice of counsel defense. [NOTE: As discussed, a response to this request would only come due if Koko's elects to rely on advice of counsel. We can discuss it again at such time, if that happens.]

According to the petitioners, "Topps has agreed to hold its Modified Request No. 4 in abeyance unless and until Koko's raises an advice-of-counsel defense."

The petitioners contend that they have represented Koko's Confectionary & Novelty, a division of A&A Global Industries, Inc. ("Koko's") "for approximately thirty years on intellectual property matters and their ongoing representation continues through today." Thus, "[n]on-party counsel's involvement with the parties and the subject matter of the New York Litigation implicates clear concerns about attorney/client communications." Moreover, petitioners also "serve as opposing counsel to Topps in the Louisiana Litigation, where they represent" Paul J. Lapeyrouse ("Lapeyrouse") "against the same allegations of patent infringement by Topps as in the New York Litigation and by the same yet-to-be-sold-or-imported product as the one at issue in New York."

The petitioners assert that the original subpoenas are overly broad and unduly burdensome because they required the petitioners "to catalogue decades worth of documents and communications," including preparing a privilege log. Topps's proposed July 2018 modifications do not overcome the defects in its subpoenas or "outweigh the heavy burden they

2

demand of" the petitioners. The petitioners contend that: (1) Topps "already has or could have sought most, if not all, of the requested information from" Koko's; (2) "nonpublic correspondence" that Koko "has with any patent or trademark offices" is not relevant and, if deemed discoverable, can be obtained from Koko's; and (3) the information sought is "not relevant or crucial to Topps' discrete set of claims or defenses against" Koko's in the New York action. Similarly, Lapeyrouse is not a party to the New York action and information sought about his patent or trade dress applications or nonpublic correspondence he had with the patent and trademark offices are irrelevant to Topps' claims against Koko's in the New York action, which concerns Topps' '316 patent, not Lapeyrouse's patents.

In support of their motion, the petitioners rely on the test announced in Shelton v. Am. Motors Corp., 805 F.2d 1323 (8th Cir. 1986), asserting that the test "has been accepted in this Circuit" and requires the party seeking discovery of an opposing counsel and "attorneys who are involved to a sufficient extent with the subject matter of the pending litigation" to show that: (1) no other means exist to obtain the information, save the deposition of opposing counsel; (2) the information requested is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. See Shelton, 805 F.2d at 1327. The petitioners assert that the document requests "clearly encroach on the attorney-client privilege," since Koko's and Lapeyrouse were and remain the petitioners' clients and neither waived the attorney-client privilege. Moreover, any benefit obtained from the subpoenas is outweighed by the undue burden imposed on the petitioners because it is disproportionate to the needs of the case, given that preparing the privilege log "would divert critical time and resources away" from the petitioners' representation of Koko's and Lapeyrouse.

3

In its opposition to the motion, Topps contends that it is appropriate to seek documents from the petitioners "given that Koko's and Mr. Lapeyrouse have refused to respond to discovery." According to Topps, its modified request Nos. 2 and 3 seek relevant documents because

> [i]f Mr. Lapeyrouse or Koko's pursued patent or trade dress applications on related candy products, those applications are likely to contain binding characterizations concerning the scope of the prior art, and the scope of Topps' patent (which is likely to have been cited as prior art). Such admissions could be used to estop the parties from taking contrary positions in the litigation on everything from validity, to claim construction, to infringement. Furthermore, efforts by Mr. Lapeyrouse or Koko's to develop and obtain intellectual property protection for "design around" products is [sic] highly relevant for arguing that they were aware that they were infringing, and for showing that they have alternative designs that they could use instead of violating Topps' intellectual property rights. It also tends to prove the novelty and secondary meaning. . . . Additionally, in order to prove validity of the trade dress, Topps must show an availability of alternative designs. . . . thus, evidence of alternative product designs for related candy products is highly relevant. Topps also notes that if Mr. Lapeyrouse or Koko's filed trade dress applications concerning any of their products, those applications would necessarily have had to include extensive information about sales channels, as well as arguments concerning why the asserted trade dress was nonfunctional. Such information would be highly relevant for showing market overlap (which is related to trade dress liability, as well as patent damages and the need for injunctive relief to prevent lost sales), and for impeaching Koko's as to any contrary functionality arguments it would seek to make.

Topps asserts that its Request No. 1 does not encroach on privileged information "because Koko's and Mr. Lapeyrouse are indisputably separate and unrelated legal entities, the presence of both of them on a communication with Petitioners would destroy any privilege that either could purport to have." Furthermore, Topps' Request No. 1 does not impose an undue burden on the petitioners and they "failed to show the volume of documents responsive to Request No. 1 is even voluminous," making only a conclusory argument that there must be a large volume. As Topps "has already gone to herculean efforts to obtain materials from Koko's and Mr.

4

Lapeyrouse" but has been "rebuffed" and the petitioners have been blocking Topps' discovery, subpoenas should not be quashed.

In support of its opposition to the motion, Topps submitted a declaration by its counsel, Jean-Paul Ciardullo ("Ciardullo"), in which he states that Topps commenced a separate case against Lapeyrouse and his company, Funtime, in Louisiana in which Topps attempted to serve him with the subpoenas without success, causing Topps to file a motion to compel Lapeyrouse to respond to the subpoenas in the Louisiana action. Ciardullo asserts that, given the petitioners' "connection to the underlying legal dispute" and "because Topps had otherwise been frustrated in its efforts to obtain discovery from Koko's and Mr. Lapeyrouse, Topps" served the subpoenas at issue on the petitioners.

In reply, the petitioners argue that: (i) "any documents which Topps is entitled to are available at least from the defendant in the underlying litigation"; (ii) "there is no privilege waiver because both Koko's and Lapeyrouse are clients of" the petitioners; (iii) "Topps is using the subpoena process in the underlying litigation to get a head start on discovery in the Louisiana litigation"; (iv) "Topps' motion to compel Lapeyrouse filed in Louisiana is not relevant to" the petitioners' subpoenas; and (v) "Topps delayed service of the subpoenas on [the petitioners]" which "belies Topps' contention that the materials sought are essential to the underlying litigation."

The petitioners also filed a document styled "Motion for the Court to Disregard and/or Strike Declaration of Jean-Paul Ciardullo and Memorandum in Support Thereof" because the declaration "is not made from personal knowledge, is rife with hearsay content, and is blatantly argumentative." Thereafter, Koko's filed a document styled "Koko's Confectionary's Response to Topps' Opposition to Cahn's Motion to Quash," asserting it was "compelled" to respond to

the Topps' opposition because it "contains so many material misrepresentations and omissions of the record in the Underlying Litigation that cannot be allowed to stand unrebutted" and arguing that: (a) "Koko's has NOT improperly withheld documents or refused to set depositions"; (b) "Topps' assertion that it did not know that Cahn was counsel to Lapeyrouse, as well as to Koko's, is hollow and false. No privileges have been waived"; and (c) "Topps' failure to provide a computation of damages prevents [the Court] from making a proportionality determination." Topps filed documents styled: (i) "The Topps Company, Inc.'s Motion to strike (1) Petitioners' New arguments on reply, and (2) Koko's Improper Submission at Dkt. 5"; and (ii) "The Topps Company, Inc.'s Opposition to Petitioners' Motion to Strike the Ciardullo Declaration (Dkt. 4)." The petitioners and Koko's filed their oppositions to Topps' motion to strike and Topps filed its reply.

## LEGAL STANDARD

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(A).

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

> Fed. R. Civ. P. 45(e)(2)(A).

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of

6

obtaining or providing legal advice." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). "It is well settled that '[t]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.'" In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (citation omitted). "The burden is a heavy one, because privileges are neither 'lightly created nor expansively construed.'" In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003) (citation omitted). "A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden." Universitas Educ., LLC v. Nova Group, Inc., No. 11 Civ. 1590, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013).

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26 (c)(1). "The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003). A determination to grant or deny a motion for a protective order or a motion to quash a subpoena is discretionary. See Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973); In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 68 (2d Cir. 2003).

### APPLICATION OF LEGAL STANDARD

Koko's did not file or join the petitioners' motion to quash the subpoenas based on Koko's assertion of its attorney-client privilege. Koko's "Response" to Topps' opposition to the petitioners' motion is baseless and improper, as Koko's neither sought nor obtained authorization for its "Response" to Topps' opposition to the motion, and Koko's makes no citation to any authority permitting Koko's "Response" to Topps' opposition to the motion. Thus, the Court will not consider Koko's improper "Response" to Topps' opposition to the motion or any other

submissions related to Koko's "Response" in determining the petitioners' motion to quash the subpoenas.

The Shelton test, on which the petitioners rely in support of their motion, was not adopted by the Second Circuit Court of Appeals. The Court is not persuaded that the Shelton test applies in the circumstance of this case.

In its complaint, in the underlying action commenced by Topps against Koko's, Topps asserted: (1) patent infringement of its United States Patent No. 6,660,316 ("'316 Patent") titled "Packaged Candy Product"; (2) false designation of origin; and (3) infringement of "the JUICY DROP lollipop" trade dress. The complaint does not mention Lapeyrouse or anything in connection with Lapeyrouse. Ciardullo's declaration consists mostly of improper conclusory assertions, arguments and factual assertions made without personal knowledge. Ciardullo does not provide any evidence corroborating his factual assertions that "Lapeyrouse and his company, Funtime, worked with Koko's to design and develop the accused product" and "Koko's and Lapeyrouse are indisputably separate and unrelated legal entities." Ciardullo failed to submit any evidence establishing Lapeyrouse's connection to Koko's or Topps's underlying case against Koko's in this court. The Court finds that any documents requested by Topps' modified subpoenas Request Nos. 1, 2 and 3 concerning Lapeyrouse or anything in connection with Lapeyrouse are irrelevant to Topps' action against Koko's.

Request No.1 of the modified subpoenas seeks "[a]ll communications and agreements to which [Koko's is] a party that refer or pertain to any or all of" the various categories listed in that request. The Court sustains the petitioners' objections that Request No. 1 of the modified subpoenas is overly broad because the request is not limited in time or in any other manner and

its sweeping scope includes requests for documents that are irrelevant to Topps' action against Koko's, which involves Topps' '316 patent.

Request Nos. 2 and 3 of the modified subpoenas are also not limited in time or scope. For example, Request No. 2 seeks "[d]ocuments sufficient to identify all patent trade dress applications (both U.S. and international) filed or owned by . . . Koko relating to candy products that either dispense liquid candy, or that contain two or more different kinds of candy." Given the limited scope of Topps' action against Koko's involving Topps' '316 patent, and to the extent that the meaning of the phrase "sufficient to identify" is capable of understanding, Topps' Request No. 2 is overly broad and seeks irrelevant information. In a note to Request No. 2, Topps asserts that "[a] simple listing of applications will suffice if that is easier." However, the subpoenas were issued pursuant to Rule 45 of the Federal Rules of Civil Procedure, and they seek, not creation of new documents, but documents to be "produced for inspection and copying" that are within the petitioners' possession, custody or control, pursuant to Rule 45, which does not contemplate or authorize commanding the subpoenaed person to create documents, including a "simple listing." Request No. 3 seeks, similarly and without time limitation, "[a]ll non-public correspondence with patent or trademark offices (both U.S. and international) concerning" Koko's "patent or trade dress applications relating to candy products that either dispense liquid candy, or that contain two or more different kinds of candy." Topps' hypotheticals about whether Koko's: (i) "pursued patent or trade dress applications on related candy products" and the contents of those applications, if they exist; (ii) was aware that it was infringing; and (iii) had alternative designs that "could be used instead of violating Topps' intellectual property rights" are insufficient, without more, to show the relevancy of the requested documents to the limited scope of the underlying action in this court.

Even assuming that Request Nos. 1, 2 and 3 seek relevant documents, their overly broad scope would subject the petitioners to undue burden in light of the petitioners' decades-long representation of Koko's in connection with Koko's intellectual property. The unlimited nature of the time period for which documents would have to be searched by the petitioners convinces the Court that the requests are unduly burdensome, despite the petitioners' failure to specify the volume of the documents to be searched. The Court finds that Topps' Request Nos. 1, 2 and 3 of the modified subpoenas are overly broad, seek irrelevant information and will subject the petitioners to an undue burden.

Concerning the petitioners' argument based on Koko's attorney-client privilege related to any communications that are intended to be, and in fact were, kept confidential for the purpose of obtaining or providing legal advice, between Koko's and the petitioners, who are neither present nor former counsel to Koko's in the underlying case, the petitioners failed to satisfy the heavy burden of establishing that the attorney-client privilege applies with respect to documents requested by Request Nos. 1, 2 and 3 of the modified subpoenas. Conclusory assertions that categories enumerated in Request No. 1 of the modified subpoenas "unavoidably touch on privileged matter," without more, do not establish that the attorney-client privilege exists.

## CONCLUSION

For the foregoing reasons, the petitioners' motion to quash the subpoenas served on them by Topps, Docket Entry No. 1, is granted.

Dated: New York, New York
       May 15, 2019

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE